UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HUNTER #242663,

        Plaintiffs,                                 Hon. Janet T. Neff

v.                                               Case No. 1:17-cv-832

JOHN JOBOULIAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court to determine whether Plaintiff has properly exhausted his administrative remedies as to two of his remaining claims.  Following the adoption of a Report and Recommendation concluding that there existed factual disputes as to whether Plaintiff properly exhausted certain claims, (ECF No. 34, 38), Defendants requested that the Court conduct an evidentiary hearing and definitively resolve the matter.  (ECF No. 40).  The Court granted Defendants' motion and a hearing was conducted on June 28, 2019.  (ECF No. 45, 61, 72).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned finds that Defendants have met their burden and, therefore, recommends that the two claims identified herein be dismissed without prejudice for failure to exhaust administrative remedies.

### I.     Background

Plaintiff is currently incarcerated at the Earnest C. Brooks Correctional Facility, but the events giving rise to this action occurred while Plaintiff was incarcerated at the Michigan Reformatory (RMI).

Plaintiff sued RMI Warden Carmen Palmer, Dentist John Joboulian, Dental Assistant Tanya Russell, Registered Nurses Kaylene Graham, Teri Byrne, and Unknown Page.   Plaintiff alleges that Defendants denied him proper dental treatment in violation of the Eighth Amendment, subjected him to unlawful retaliation in violation of the First Amendment, and violated his rights under state law.

Several claims remain in this matter, but only two are at issue at the moment: (1) Plaintiff's Eighth Amendment claim that on February 20, 2014, Defendant Graham placed in Plaintiff's medical file a "fabricated" report "downplaying" the seriousness of Plaintiff's need for dental care, and (2) Plaintiff's Eighth Amendment claim that on June 24, 2014, Defendant Joboulian placed in Plaintiff's medical file a "fabricated" report "downplaying" the seriousness of Plaintiff's need for dental care. Defendants Graham and Joboulian argue that Plaintiff has failed to properly exhaust these two claims. The Court previously determined that there existed factual disputes precluding summary judgment for Defendants on these claims.   (ECF No. 34, 38).

In *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015), the Sixth Circuit addressed whether "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury."   *Id.* at 677-78.   Consistent with the other circuit courts to have addressed this question, the court concluded that questions regarding proper exhaustion under the Prison Litigation Reform Act (PLRA) constituted "matters of judicial administration. . .that are not bound up with the merits of the underlying dispute."   *Id.* at 678.   Finding that judges are permitted to decide factual disputes related to the resolution of such administrative matters, the court held that "disputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial."   *Ibid.*

Accordingly, the undersigned conducted an evidentiary hearing on June 28, 2019, at which several people testified.   In light of the evidence presented at this hearing, the Court finds that Plaintiff has failed to properly exhaust the two claims at issue and, therefore, recommends that these particular claims be dismissed without prejudice.

## II.    Summary Judgment Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."   *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).   Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."   *Id.* at 353-54.   In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).   Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."   *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."   *Arnett*, 281 F.3d at 561.   Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."   *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**III.    Exhaustion Standard**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to

-4-

exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears

the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme

Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as

"compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548

U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the
> PLRA to 'properly exhaust.'   The level of detail necessary in a grievance to comply
> with the grievance procedures will vary from system to system and claim to claim, but
> it is the prison's requirements, and not the PLRA, that define the boundaries of proper
> exhaustion.

*Bock*, 549 U.S. at 218.

## IV.    Analysis

Theunderlying issue regarding the two claims presently at issue is fairly straightforward.   In

a previously submitted affidavit, Plaintiff asserts that on July 6, 2016, he submitted a grievance

regarding these two claims.   (ECF No. 31 at PageID.164, 199).   Plaintiff asserts that the Grievance

Coordinator "refused and/or intentionally failed" to process this grievance as required by MDOC

policy.   (ECF No. 31 at PageID.164).   Plaintiff asserts that he subsequently requested that this

grievance be processed, but that the Grievance Coordinator "refused to respond and/or ignored my

request."   (ECF No. 31 at PageID.165).   Thus, Plaintiff argues that he has satisfied the exhaustion

requirement by pursuing all *available* administrative remedies.   Three people testified at the June 28,

2019 evidentiary hearing.   The relevant portions of their testimony are as follows.

### A.    Richard Russell

Russell, the MDOC's grievance manager, offered the following testimony.   In his capacity as

grievance manager, Russell is responsible for ensuring the MDOC's grievance policy is implemented

properly at the MDOC's various facilities.   (ECF No. 82 at PageID.422).   Russell would be informed

of any reports or complaints that prison officials were not properly processing grievances.   (*Id.* at

PageID.424-25).   The grievance coordinator at the Michigan Reformatory is Kurt Miller.   (*Id.* at

PageID.424).   Russell has never heard or been informed of any complaints that Miller was not

performing his duties properly.   (*Id.* at PageID.425).   Russell is not acquainted with Plaintiff and has

no reason to "hold a grudge against" Plaintiff.   (*Id.* at PageID.425).

On cross-examination, Russell testified that he has never acted improperly to "cover up for the

wrongdoing of another MDOC employee."   (*Id.* at PageID.428-29).   Russell asserted that he was not

aware of any instance in which a grievance coordinator had refused to process a grievance.   (*Id.* at

PageID.430).   Prisoner grievances are recorded and maintained in a searchable database.   (*Id.* at

PageID.426-27).   Russell conceded that if Step I grievance was processed "under the wrong prisoner

number," it might result in a database search, conducted by prisoner number, to incorrectly indicate

that a prisoner had not filed a particular grievance.   (*Id.* at PageID.430-31).   Russell further testified,

however, that when searching the grievance database he performs a second search by the prisoner's

last name to prevent this very occurrence.   (*Id.* at PageID.431).

B.      Kurt Miller

Miller, the grievance coordinator at the Michigan Reformatory during the relevant time period,

testified as follows.   In his capacity as grievance coordinator, Miller processes and coordinates the

responses to prisoners' Step I and Step II grievances.   (*Id.* at PageID.438).   Prisoners initiate the

grievance process by completing a Step I grievance form which are available in each housing unit.

(*Id.* at PageID.439).   The prisoner then places the grievance form in a mailbox.   (*Id.*).   Each housing

unit has a mailbox and prisoners can access them "whenever they go to breakfast, lunch, dinner, yard, [or] various callouts."   (*Id.*).

Each mailbox is locked and the contents of each mailbox are collected nightly and taken to the mailroom for sorting and processing.   (*Id.* at PageID.439-40, 457).   All prisoner grievances located in the mailboxes are delivered to the grievance coordinator's office.   (*Id.* at PageID.440).   If a grievance is asserted against staff at a different facility, it is returned to the prisoner with instructions to submit the grievance to the appropriate facility.   (*Id.*).   Otherwise, the grievance is assigned "a unique identifying number" and "logged into the database."   (*Id.*).   The grievance is then "either rejected" or "assigned a respondent and sent out for a response."   (*Id.*).   Every grievance, except those concerning staff at a different facility, are logged into the database and assigned a unique identification number.   (*Id.* at PageID.441).

A review of the relevant database revealed no evidence that Plaintiff filed the disputed grievance.   (*Id.* at PageID.441-42).   This review did, however, reveal that four other grievances, filed by Plaintiff between June 1, 2016, and August 31, 2016, were received and properly processed by Miller.   (*Id.* at PageID.442-47).   Miller testified that he had never before seen the grievance presently in dispute, but had he received such, he would have "processed it, entered it into a database and assigned [it] an identified number."   (*Id.* at PageID.449-50).

C.    Scott Schooley

During the time period relevant to this matter, Schooley was employed as the deputy warden of the Michigan Reformatory.   (*Id.* at PageID.478-79).   Plaintiff previously submitted a copy of a memo he allegedly sent to Schooley on August 4, 2016, asserting that Miller refused to process the grievance which is presently at issue.   (ECF No. 31-1 at PageID.208).   Schooley testified that had he

received such a memo, a record of such would exist.    (*Id.* at PageID.481-82).    A search of Schooley's

records and computer system revealed no indication that the memo in question was ever received by

Schooley.    (*Id.* at PageID.482-83).    Schooley asserted that he did not see the memo in question until

he was provided a copy of such as part of this litigation.    (*Id.*).

        D.      Summary

        Plaintiff argues that Defendants' motion should be denied because Kurt Miller refused to

process the grievance in question, thus making the grievance process unavailable.    Plaintiff is correct

that he is only required to exhaust his *available* administrative remedies.    *See Ross v. Blake*, 136 S.Ct.

1850, 1858 (2016).    The Court finds, however, that Defendants have met their burden to demonstrate

that the grievance process was, in fact, available to Plaintiff who simply failed to take advantage of

such.    Stated differently, the Court finds that Defendants have met their burden of establishing that

Plaintiff did not submit the disputed grievance.

        Kurt Miller testified that grievance forms, as well as mailboxes for submitting grievances, are

available in every housing unit.    According to Miller, the mailboxes are locked until the mail therein

is retrieved and taken to the mailroom.    Miller further testified that every grievance concerning

matters at the Michigan Reformatory are "logged into the database" and assigned "a unique identifying

number."    Miller testified that he had never before seen the grievance in question and a search of his

database revealed that no such grievance had been submitted.    This database did, however, indicate

that four other grievances Plaintiff filed in the same general time period were, in fact, received and

processed.

        Plaintiff was unable to demonstrate on cross-examination that Miller was unworthy of belief

or had failed to testify truthfully.    Likewise, Plaintiff failed to present or identify evidence calling into

doubt Miller's testimony or supporting the argument that Plaintiff did, in fact, properly submit his grievance.   In sum, the Court finds Miller to be a credible witness and accepts his testimony.   On the other hand, the Court does not find Plaintiff's theory to be plausible or supported by the evidence. While the testimony of Richard Russell and Scott Schooley was only marginally relevant, the Court nonetheless found both witnesses to be credible and, therefore, accepts their testimony.   Plaintiff was unable to demonstrate on cross-examination that either witness was unworthy of belief or had failed to testify truthfully.   Also, it is inherently illogical that other of Plaintiff's grievances were received and processed save for this one. Accordingly, the undersigned finds that Defendants have met their burden of establishing that Plaintiff failed to properly exhaust his administrative remedies with respect to the two claims at issue.   The undersigned recommends, therefore, that the claims in question be dismissed without prejudice for failure to exhaust administrative remedies.

## V.    Conclusion

For the reasons articulated herein, the undersigned recommends that the following two claims be dismissed without prejudice for failure to exhaust administrative remedies: (1) Plaintiff's Eighth Amendment claim that on February 20, 2014, Defendant Graham placed in Plaintiff's medical file a "fabricated" report "downplaying" the seriousness of Plaintiff's need for dental care, and (2) Plaintiff's Eighth Amendment claim that on June 24, 2014, Defendant Joboulian placed in Plaintiff's medical file a "fabricated" report "downplaying" the seriousness of Plaintiff's need for dental care.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to

file objections within the specified time waives the right to appeal the District Court's order.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: October 17, 2019                                          /s/ Ellen S. Carmody
                                                                                ELLEN S. CARMODY
                                                                                United States Magistrate Judge