UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HUNTER #242663,

        Plaintiff,                                 Hon. Janet T. Neff

v.                                             Case No. 1:17-cv-832

JOHN JOBOULIAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 110.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED,** and Plaintiff's complaint be dismissed with prejudice.

## I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Kinross Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on September 14, 2017, against several MDOC employees based on events that occurred during Plaintiff's incarceration at the Michigan Reformatory (RMI) between February 2014 and June 26, 2014. Following dismissal of certain Defendants and claims based on Plaintiff's failure to exhaust his administrative remedies, the remaining Defendants are Defendant Palmer, the former Warden of RMI; Defendant Graham, a former MDOC Registered Nurse at RMI; Defendant Page Nixon (referred to herein as Page), a Licensed Practical Nurse at RMI; Defendant Byrne, a former Registered Nurse at RMI; and Defendant Joboulian, a retired dentist at RMI. Plaintiff's remaining

1

claims are: (1) Eighth Amendment claims against Defendants Palmer, Page, Byrne, and Joboulian for deliberate indifference to Plaintiff's serious need for dental care; (2) an Eighth Amendment excessive force claim against Defendant Byrne; (3) a failure-to-intervene claim against Defendant Page; (4) First Amendment retaliation claims against Defendants Page and Byrne; and (5) state-law claims of intentional infliction of emotional distress against all remaining Defendants.

Plaintiff was transferred to RMI on February 20, 2014. Plaintiff claims that during the prior two years, the filling in his number 18 tooth had come out and that he had been placed on the waiting list at other facilities for dental cleaning and to have his tooth restored. (ECF No. 123 at PageID.779.) Plaintiff was seen for an intake screening by Defendant Graham, who told Plaintiff to kite dental to be seen for his dental issue. (*Id.* at PageID.731; ECF No. 123-4.) On February 21, 2014, Plaintiff sent a kite to dental, informing them that he had been waiting almost two years to have his infected number 18 tooth restored. Plaintiff requested urgent dental care due to the severe pain, discomfort, and bad breath that he was experiencing. Plaintiff alleges that he also sent an "administrative complaint" to Defendant Palmer on the same date, requesting that she place him on the call-out to have his tooth restored. (ECF No. 123 at PageID.782; ECF No. 123-7.) However, the dental clinic has no record of receiving Plaintiff's kite (ECF No. 110-3 at PageID.657), and Defendant Palmer states that she has no record of receiving any complaint from Plaintiff about his dental issues (ECF No. 110-5 at PageID.680). Plaintiff says that he never received a response from Defendant Joboulian or Defendant Palmer.

Plaintiff claims that on March 14, 2014, he spoke with Defendant Palmer about his ongoing dental issues, which included the severity of his dental pain and suffering, and Defendant Palmer acknowledged receipt of the "administrative complaint." Plaintiff claims that Defendant Palmer assured him that she would make sure that his dental problem was addressed, but she failed to

follow through on this promise. (ECF No. 123 at PageID.782.) Although Plaintiff claims that his dental condition and pain worsened over the next four months, he did not submit any additional dental kites or file any grievances regarding dental care until June 2014. Plaintiff claims that he purchased pain pills from other prisoners to manage his tooth pain. (ECF No. 110-4 at PageID.669.)

Plaintiff alleges that he sent a follow-up kite to Defendant Joboulian on June 18, 2014, reiterating the severity of his dental pain and suffering, but Defendant Joboulian did not respond. (ECF No. 123 at PageID.784.) However, the dental clinic has no record of receiving a kite from Plaintiff around this date. (ECF No. 110-3 at PageID.657.) On June 19, 2014, Plaintiff spoke with Sgt. Breedlove in his housing unit and requested her assistance in getting dental care for his infected tooth. Plaintiff alleges that Sgt. Breedlove attempted to contact Defendant Joboulian, but Defendant Page intercepted the call. Plaintiff alleges that he also spoke to Defendant Page, who instructed him to fill out a kite detailing his dental problem so that he could immediately be seen by Defendant Joboulian.[1] (ECF No. 123 at PageID.784.) Defendant Page does not deny speaking with Plaintiff, but she alleges that if she did answer the phone, she would have transferred the call to a Registered Nurse in the medical clinic because, as a Licensed Practical Nurse (LPN), she is not permitted to triage or evaluate medical or dental claims. (ECF No. 110-6 at PageID.685–86.)

Plaintiff alleges that he followed Defendant Page's instructions, believing that he was about to receive emergency dental care from Defendant Joboulian. Plaintiff says that at 2:48 p.m.,

---

[1] Plaintiff's statement about Defendant Page instructing him to fill out a dental kite is at odds with the grievance that he filed June 24, 2014. Plaintiff stated that Sgt. Breedlove "notified health services of my condition, then instructed me to fill out a dental kite indicating exactly what the problem was, so that I could be immediately seen by the dentist, then she instructed c/o Birk to send me to health services for urgent dental care, per RN Page." (ECF No. 123-12 at PageID.876.) In fact, Plaintiff says nothing in his grievance about speaking with Defendant Page on the phone.

Corrections Officer Birk sent him to see Defendant Joboulian for urgent dental care, and he attaches a copy of the prisoner pass that Birk issued. (ECF No. 123 at PageID.784; ECF No. 123-10.) Notably, however, the pass shows that Birk sent Plaintiff to "Healthcare," not the dental clinic. (*Id.*) Plaintiff alleges that when he arrived at healthcare, no one else was present except Defendants Page and Byrne. Plaintiff alleges that Defendant Byrne took his dental kite, took his vitals, and went into the back room as if she was going to get Defendant Joboulian. But rather than getting Defendant Joboulian, Defendant Byrne returned with a yellow construction flashlight and a "pointy metal object," which she used to "poke and prod" Plaintiff's teeth and gums until they were numb and bleeding. Plaintiff alleges that Defendant Page failed to intervene and protect him from Defendant Byrne, even though she knew that he was there for emergency dental care. (ECF No. 123 at PageID.785.) Plaintiff alleges that he was enraged and asked Defendant Byrne what she was doing, to which she replied that she did not know because she was a nurse, not a dentist. Plaintiff alleges that Byrne reacted "vindictively" by scribbling out the dental checkmark, forging his prisoner number on the kite, and stating that "it doesn't say dental anymore. You need to fill out another kite if you wanna see the Dentist, because this was medical." (*Id.*) Plaintiff alleges that he told Defendant Byrne that he was going to file a grievance against her, and she responded, "I know who you are Hunter, and I don't care," then kicked Plaintiff out of healthcare. (*Id.*)

The June 19, 2014 medical record of the visit that Defendant Byrne completed documents the details of the visit. Although Plaintiff disputes the accuracy of the record as "false and contradictory," it confirms many of the details Plaintiff alleges. For example, it notes that Plaintiff came to health care complaining about the last tooth on the left side of the bottom gum and that

Defendant Byrne examined his teeth and gums. It also states that he was instructed to kite dental for an appointment.[2] (ECF No. 110-8 at PageID.700–01.)

When Plaintiff returned to his unit, he submitted a dental kite, as Defendant Byrne had instructed. (ECF No. 110-9 at PageID.704; ECF No. 123 at PageID.790–91.) On June 24, 2014, the dental clinic responded to Plaintiff's kite, stating, "You will be seen as staff and time permits." (ECF No. 110-9 at PageID.704.) Defendant Joboulian saw Plaintiff later that morning. Defendant Joboulian examined the tooth and took x-rays. He noted no swelling but found the vestibule tender. He was unable to determine whether or not the tooth was restorable. Defendant Joboulian told Plaintiff that he would attempt to restore the tooth but would have to extract it if it could not be saved. (ECF No. 110-3 at PageID.657; ECF No. 110-7 at PageID.695.) Defendant Joboulian prescribed 20 tablets of Ibuprofen and 30 tables of Amoxicillin and scheduled Plaintiff for a filling/extraction. Plaintiff returned to the dental clinic two days later, on June 26, 2014, for the restoration/extraction appointment. Defendant Joboulian attempted to restore the tooth, but the decay went too deep into the nerve center of the tooth. (ECF No. 110-3 at PageID.110-3 at PageID.658–59; ECF No. 110-7 at PageID.695–96.) After Plaintiff signed a consent form, Defendant Joboulian extracted Plaintiff's tooth number 18 without issue. (*Id.* at PageID.696; ECF No. 110-10.)

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts

---

[2]  The record also indicates that Plaintiff felt that he should not be charged for the visit because he requested to be seen by dental on the kite that he brought down but had a healthcare exam instead. (ECF No. 110-8 at PageID.700.) Plaintiff subsequently filed a grievance asserting the same complaint—that he should not be charged for the healthcare visit because he was seeking dental care. (ECF No. 123-13 at PageID.883.)

are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.   Discussion

#### A.    Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

6

attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (1994). *Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, admini, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004).

### 1.      Defendants Palmer and Page

Defendants Palmer and Page argue that they are entitled to qualified immunity because they were not personally involved in Plaintiff's dental care.[3]  The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that either no constitutional violation occurred or that the right was not clearly

---

[3] Plaintiff states in his response that Defendants Palmer and Page mislead the Court by arguing that they were not personally involved in his medical care and that his claim is based on supervisory and/or vicarious liability. Plaintiff asserts that his claim is "clearly" based on a failure to protect, and not a failure to provide medical care. (ECF No. 122 at PageID.767.) Plaintiff's argument lacks merit, as he did not allege a failure-to-protect claim in his complaint. Moreover, there is no factual basis for a failure-to-protect claim. *See Cruse v. Wayne*, No. 1:12CV479, 2014 WL 713001, at *3 (W.D. Mich. Feb. 25, 2014) ("An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate.").

established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Plaintiff contends that the qualified immunity argument Defendants Palmer and Page forward is deficient because it does not address whether Plaintiff has established a constitutional violation or whether Defendants violated clearly established law. But Plaintiff misses the point of Defendants' argument. A defendant can be held liable under Section 1983 only if he or she was personally involved in the alleged constitutional violation. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Each defendant must be 'personally involved' in the unconstitutional action." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (citing *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013)). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (internal quotation marks omitted). That is, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Thus, personal involvement is a crucial requirement of a claim under Section 1983. Absent a defendant's involvement, a plaintiff's claim must fail under the first step of the qualified immunity analysis.

### a.    Defendant Palmer

In support of her argument that she was not personally involved in Plaintiff's dental care, Defendant Palmer has submitted an affidavit in which she states that, as Warden, she was responsible for the overall operations of the facility, including, among other things, maintaining the security of the facility and its staff; establishing offender program goals, objectives and

priorities; ensuring completion of mandatory training for all staff; and ensuring adherence to departmental policies and procedures by both prisoners and staff. (ECF No. 110-5 at PageID.679–80.) Defendant Palmer states that, if Plaintiff or any other prisoner had spoken to her about dental or medical issues, she would have encouraged the prisoner to kite healthcare or dental for treatment. (*Id.* at PageID.681.) Defendant Palmer further states that she was not responsible for developing or establishing the frequency of dental care services for the prisoner population. Instead, issues concerning dental care services are determined by the Bureau of Health Care Services Administrator, in consultation with the CFA Deputy Director, and dental services provided at RMI are coordinated by the facility Dentist as directed by the Dental Director. (*Id.* at PageID.681–82.) Finally, Defendant Palmer states that she was not personally involved with any prisoner's dental care or treatment because she is not a dentist. (*Id.* at 682.)

Plaintiff contends that Defendant Palmer can be held liable for denying him dental care because she failed to respond to his February 21, 2014 "administrative complaint" about the lack of dental care, which was causing him to endure pain and suffering. Plaintiff also contends that Defendant Palmer failed to follow up on her promise during their March 18, 2014 discussion in the food service building that she would make sure that Plaintiff got dental treatment. Even accepting Plaintiff's allegations as true, they are insufficient to render Defendant Palmer liable for inadequate dental care. First, regarding Plaintiff's "administrative complaint," in *Sedore v. Burt*, No. 1:16-cv-903, 2019 WL 4740589 (W.D. Mich. Sept. 12, 2019), *report and recommendation adopted*, 2019 WL 4738142 (W.D. Mich. Sept. 27, 2019), the plaintiff alleged that the warden was liable for his poor medical treatment because she failed to respond to his kites or to intervene on his behalf. Magistrate Judge Kent rejected the argument, noting that the warden was not one of the medical professionals responsible for the plaintiff's medical care. *Id.* at *15. In addition,

Magistrate Judge Kent concluded that the warden was not deliberately indifferent for allowing the medical staff to do their job of treating prisoners, noting that "a prisoner cannot manufacture a federal constitutional claim against a warden based upon letters sent to the warden expressing dissatisfaction with the medical treatment." *Id.* (citing *Ramsey v. Haney*, No. 5:15-CV-117-DCR-REW, 2016 WL 8856665 at *6 (Feb. 5, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 782394 (E.D. Ky. Feb. 29, 2016)). Thus, Defendant Palmer's failure to respond to Plaintiff's "administrative complaint" does not suffice to establish her personal involvement or deliberate indifference to Plaintiff's serious dental need.

Plaintiff's conversation with Defendant Palmer also is not a basis for liability. Because Defendant Palmer was not a dental provider, Plaintiff's claim against her is based solely on supervisory liability. As noted above, however, supervisory liability will not be imposed for a "mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Instead, a plaintiff must show that the supervisor encouraged or condoned the alleged unconstitutional conduct. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Plaintiff's claim against Defendant Palmer is based on her alleged failure to act, that is, her failure to follow through on her alleged assurance that his dental problem would be addressed. In *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992), the plaintiff alleged that the deputy superintendent of treatment at his facility violated his Eighth Amendment rights. The plaintiff alleged that he failed to receive his prescription medication in the "pill line" even after he had sent complaints to the defendant and the infirmary administrator. The evidence showed that the defendant had referred inmate complaints about not receiving their medication to the head nurse, whom the defendant knew was wrongly altering and destroying some of the

inmates' prescriptions. The court concluded that the defendant could be held directly liable for not responding to the plaintiff's complaint:

> Morris is charged with abandoning the specific duties of his position—reviewing and responding to inmates' complaints about medical needs—in the face of actual knowledge of a breakdown in the proper workings of the department. Hill does not seek to hold Morris vicariously liable for the head nurse's misconduct. Rather, Morris personally had a job to do, and he did not do it. His failure to do his job resulted directly in a violation of the plaintiff's Eighth Amendment right.

*Id.* at 1213. In another case, *Taylor v. Michigan Department of Corrections*, 69 F.3d 76 (6th Cir. 1995), the plaintiff, who was slightly built, mildly mentally disabled, and had youthful looking features, was sexually attacked shortly after he was transferred to another facility. The plaintiff alleged that the defendant warden was liable under Section 1983 based on his failure to establish a policy or procedure that would protect vulnerable inmates from transfers to unsafe prisons. The court held that the defendant warden could be liable for the plaintiff's injuries because he was responsible for reviewing and approving all prisoner transfers from the facility and was also responsible for implementing procedures that would protect vulnerable inmates from dangerous transfers. The court reasoned that liability was not based on respondeat superior because the defendant was "not merely a supervisor, but [wa]s the official directly responsible both for transfers and for adopting reasonable transfer procedures." *Id.* at 80–81.

Here, in contrast to *Hill* and *Taylor*, Defendant Palmer did not ignore a complaint that fell within her area of responsibility. *See Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("In both *Taylor* and *Leary* [*v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003)] the plaintiffs presented evidence that it was the active performance of the defendants' individual job function which directly resulted in their constitutional injury. Plaintiff presents no evidence that any execution of the supervisors' job function resulted in Plaintiff's injury."). Although Defendant Palmer was responsible for the overall operation of the prison, dealing with dental care and inmate

complaints about dental care was not within her specific area of responsibility. Thus, Plaintiff's claim amounts to nothing more than that Defendant Palmer failed to act, which is insufficient to impose liability under Section 1983. *See Ashley v. Boayue*, No. 19-10484, 2020 WL 219566, at *2 (E.D. Mich. Jan. 15, 2020) (holding that the warden was not liable even though she acknowledged the problem after speaking to the plaintiff because the allegations "still amount to no more than an attempt to hold Burt liable under a theory of respondeat superior").

### b.    Defendant Page

Defendant Page contends that she cannot be liable for deliberate indifference to Plaintiff's serious dental/medical need because she did not participate in Plaintiff's medical evaluation on June 19, 2014. In her affidavit, Defendant Page states that, as an LPN, she is not authorized to triage or evaluate prisoners' medical or dental complaints.[4] (ECF No. 110-6 at PageID.686.) She further states that she did not participate in Plaintiff's evaluation or treatment on June 19. Instead, Defendant Byrne completed the evaluation. (*Id.* at PageID.687.) Although Plaintiff disputes much of Defendant Page's affidavit as well as the Nurse Protocol summarizing the details of Plaintiff's healthcare visit on July 19, Plaintiff's own version of events shows that Defendant Page was not

---

[4] Plaintiff contends that Defendant Page's affidavit is defective because it states, "I declare that to the best of my knowledge and belief, the information in this affidavit is true, correct, and complete." (ECF No. 110-6 at PageID.688.) The first paragraph of her affidavit is more limiting, stating, "The information set forth below is based on my personal knowledge, and if called as a witness, I could testify competently to the same." (*Id.* at PageID.684.) Although the statements may create some ambiguity when read together, the substance of the affidavit reveals that Page's statements are based on her personal knowledge. In *Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015), the court held "that when affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit." *Id.* at 605. The *Ondo* court said that if the district court can distinguish between statements made on personal knowledge and those based on information and belief, "the court should excuse the affiant's stylistic error, and must admit the parts based solely upon personal knowledge, while striking the parts based upon belief." *Id.* Exercising such discretion, I determine that the entire affidavit is based on personal knowledge.

personally involved in denying Plaintiff treatment or had any direct involvement with Plaintiff's dental issue. As Plaintiff alleges, it was Defendant Byrne who took his vitals and examined his teeth and gums. Moreover, Plaintiff fails to refute Defendant Page's statement that, as an LPN, she is not permitted to diagnose or evaluate patients. Therefore, Plaintiff's deliberate indifference claim fails as to Defendant Page for lack of personal involvement.

### 2. Defendant Byrne

Plaintiff alleges that he was sent to see the dentist, but instead, Defendant Byrne examined his teeth. Although Plaintiff alleges that Defendant Byrne used a "big yellow construction flashlight and a pointy metal object" to "poke and prod" his "teeth and gums until they were numb and bleeding" (ECF No. 123 at PageID.785), he admitted in his deposition that the metal object was "a regular medical tool." (ECF No. 110-4 at PageID.670.) Defendant Byrne found no evidence of redness, swelling, or drainage. (ECF No. 110-8 at PageID.700.) Plaintiff disputes this finding, but he admits that Defendant Byrne told him that she was not a dentist and he should kite the dentist if he wanted dental care. (ECF No. 123 at PageID.785.) Under the circumstances, Defendant Byrne cannot be said to have been deliberately indifferent to Plaintiff's serious dental need because she examined him and instructed him to kite the dentist. Plaintiff fails to present any evidence that Defendant Byrne knew of, and disregarded, an excessive risk to Plaintiff's health.

The crux of Plaintiff's claim is that Defendant Byrne (like Defendant Page), violated the Eighth Amendment because she interfered with the treatment of his tooth by refusing to allow him to see Defendant Joboulian for urgent dental treatment. *Estelle*, 429 U.S. at 104–05 (holding that deliberate indifference can arise where prison doctors ignore a prisoner's needs and when prison guards intentionally delay or deny access to medical care). Plaintiff's claim thus depends on the following: (1) Defendant Joboulian was present at RMI on July 19; and (2) he was available to see Plaintiff. Plaintiff has presented no evidence establishing either fact. Plaintiff admitted that neither

14

Byrne nor Page said anything about whether a dentist was at the facility that day, and he conceded that "we don't know if there was or wasn't." (ECF No. 110-4 at PageID.670.) In contrast, Defendant Page states that it is likely that Plaintiff was seen by healthcare for his dental issue because dental staff were unavailable. (ECF No. 110-6 at PageID.686.) She further notes that during that time, the dental clinic was not staffed every day, but when it was staffed, it was open from 7:00 a.m. to 3:30 p.m. (*Id.* at PageID.686–87.) When dental staff was not available, an R.N. would evaluate prisoners with urgent or emergent dental conditions. (*Id.* at PageID.687.) This is consistent with what Defendant Joboulian told Plaintiff—he was only at RMI on certain days. (ECF No. 110-4 at PageID.668.) Citing Defendant Page's affidavit, Plaintiff claims that Defendant Joboulian was at RMI and available to see him because he went to healthcare around 2:48 p.m. and the dental clinic did not close until 3:30 p.m. However, Defendant Page does not state that Defendant Joboulian was present at RMI that day. Rather, she simply identifies the dental clinic's hours of operation "[w]hen it is staffed." Moreover, Defendants attached to their reply the healthcare logbook for June 19, 2014, which indicates that dental staff were not available when Plaintiff went to healthcare because all dental callouts were canceled for the day at 12:35 p.m. (ECF No. 125-2.) Although Plaintiff asserts that the logbook was altered (ECF No. 131 at PageID.967–68), he has no evidence to support this assertion.

Accordingly, I recommend that the Court dismiss Plaintiff's deliberate indifference claim against Defendant Byrne.

### 3.  Defendant Joboulian

It is unclear whether Plaintiff intended to assert a deliberate indifference claim against Defendant Joboulian, as he states in his surreply that he "has never alleged that Defendant[] Joboulian failed to provide him adequate medical care." (ECF No. 131 at PageID.972.) Regardless,

even if such claim remains, the evidence shows that Defendant Joboulian was not deliberately indifferent to Plaintiff's serious dental need.

Although Plaintiff claims that Defendant Joboulian failed to respond to his February 21, 2014 dental kite, there is no evidence that he ever received it. In fact, Defendant Joboulian did not become aware of Plaintiff's need for dental care until July 24, 2014, and he examined Plaintiff that day.[5] Although Plaintiff claims that Defendant Joboulian performed only a "cursory" emergency oral examination on July 24, the dental record indicates that Defendant Joboulian took x-rays and scheduled Plaintiff for a filling/extraction. (ECF No. 110-3 at PageID.657.) Defendant Joboulian saw Plaintiff two days later and, after determining that the tooth could not be saved, extracted it with Plaintiff's consent.

Plaintiff fails to show that Defendant Joboulian was deliberately indifferent to Plaintiff's serious dental needs. Defendant Joboulian examined Plaintiff's tooth and extracted it two days later. The fact that Plaintiff may have wanted different treatment on July 24, or asserts that he was harmed by the two-day delay in extracting the tooth, is not a basis for an Eighth Amendment claim, particularly because Plaintiff fails to present medical evidence establishing the detrimental effect of the delay. *See Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) ("In a case like this, involving a claim based on the prison's failure to treat a condition adequately, medical proof is necessary to assess whether the delay caused a serious medical injury.") (internal quotation marks omitted). Plaintiff's claim also fails under the subjective prong, as he has not shown that Defendant

---

[5] Plaintiff asserts that Defendant Joboulian admitted in his answer to a request for admission that "his awareness of Plaintiff's need for urgent dental care dates back to 2012." (ECF No. 122 at PageID.769–70.) This assertion lacks merit, as it misrepresents the substance of Defendant Joboulian's answer. (ECF No. 123-17 at PageID.901–02.)

Joboulian consciously exposed him to an excessive risk of serious harm. *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

Accordingly, I recommend that the Court dismiss Plaintiff's deliberate indifference claim against Defendant Joboulian.

### B.    Excessive Force

Plaintiff alleges that Defendant Byrne violated his Eighth Amendment rights when she examined him on July 19, 2014, by using excessive force. He further alleges that Defendant Page failed to intervene and stop the examination.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 101-02. Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes*, 452 U.S. at 346.

The Supreme Court has held that, "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained." *Id.* at 37 (quoting *Hudson*, 503 U.S. at

7). The degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

This claim lacks merit and should be dismissed. Plaintiff's allegation is that Defendant Byrne held a flashlight and used a "pointy metal object," which he concedes was a medical tool, to poke and prod his teeth until they were numb and bleeding. (ECF No. 123 at PageID.785.) As uncomfortable as it may be, Plaintiff merely describes what many people normally experience during a routine teeth cleaning at the dentist—being subjected to a dental assistant's poking and prodding of their gums and teeth with a sharp tool, sometimes causing bleeding and swelling. The evidence shows that Defendant Byrne used the medical tool for a legitimate purpose. Plaintiff's discomfort does not establish an Eighth Amendment violation, particularly because there is no evidence upon which a reasonable jury could conclude that Defendant Byrne used the medical tool maliciously or sadistically to cause harm. Therefore, I recommend that Plaintiff's excessive force claim against Defendant Byrne and his failure-to-intervene claim against Defendant Page be dismissed.

### C. Retaliation

Plaintiff's final federal claim is for retaliation. Plaintiff alleges that Defendants Byrne and Page retaliated against him for his grievance activity during the July 19, 2014 examination. The requirements for a valid First Amendment retaliation claim are well established. In order to state a retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en

banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has established the first element—protected conduct—as he submits a copy of a grievance that he filed on April 23, 2014 against medical staff, including Defendant Byrne, for failure to provide medical treatment. (ECF No. 123-14.) In addition, Plaintiff's threat to file a grievance appears to suffice as protected conduct. *See Betty v. Heyns*, No. 1:15-CV-445, 2018 WL 1477577, at *2 (W.D. Mich. Mar. 27, 2018) (concluding that consistent with *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009), courts within the Sixth Circuit have found that a threat to file a grievance can satisfy the first element of a retaliation claim).

As for the second element, an action is adverse if it would deter a person of ordinary firmness from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 394. In the prison context, "adverse action" includes "[h]arassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates." *Id.* at 398. Plaintiff argues that he has alleged a number of adverse actions, including: (1) Defendant Page lured Plaintiff to healthcare under false pretenses (that he was going to receive dental care) so that Defendant Byrne could assault him; (2) Byrne assaulted him with the medical tool; (3) Defendant Byrne refused or intentionally failed to refer Plaintiff to the dentist for his urgent dental condition; and (4) Defendant Byrne fabricated a Nurse Protocol (record) to conceal the assault and downplay the seriousness of Plaintiff's dental condition in order to prolong his pain and suffering for an additional eight days. (ECF No. 122 at PageID.774.) In my judgment, none of these actions qualifies as sufficiently adverse to create a triable issue on Plaintiff's retaliation claim. First, as for luring Plaintiff to healthcare under false

pretenses, this is not sufficiently adverse to deter a prisoner of ordinary firmness from engaging in protected conduct because Plaintiff was not subjected to adverse consequences or deprived of anything; per his testimony, he was already not receiving dental treatment. Second, regarding Defendant Byrne's examination, regardless of how Plaintiff characterizes it, the evidence of record shows that it was for a legitimate medical/dental purpose. In fact, implicit from Plaintiff's own allegations is that he consented to the examination; he had to open his mouth. Plaintiff does not allege that Defendant Byrne used force or coercion to gain his compliance. Third, while the denial of medical or dental care could be sufficiently adverse to constitute adverse action, *see O'Brien v. Mich. Dep't of Corrs.*, 592 F. App'x 338, 343 (6th Cir. 2014) ("O'Brien has alleged an adverse action because a delay in treatment and discontinuance of medication would likely deter a prisoner like O'Brien, who believed he needed the medication to avoid the symptoms from which he allegedly suffered."), this adverse action depends on Plaintiff's allegation that Defendant Joboulian was at the facility and available to see Plaintiff. As set forth above, Plaintiff has presented no evidence to prove this allegation. Finally, the allegedly fabricated "Nurse Protocol" cannot qualify as an adverse action because Plaintiff points to no evidence indicating that it had any impact on Plaintiff's receipt of dental care between July 19 and July 26. He cites no testimony by Defendant Joboulian or any other dental staff member that Defendant Byrne's fabricated note caused them to put off or delay treating Plaintiff's tooth, or even that they were aware of it.

Plaintiff also fails to establish causation. Defendant Page states that she was not aware of Plaintiff's grievance activity at the time of the July 19, 2014 appointment. (ECF No. 110-6 at PageID.688.) Plaintiff fails to present any evidence refuting Defendant Page's affidavit. Moreover, as to both Defendants, Plaintiff offers nothing more than his conclusory assertions that Defendants retaliated against him. To establish the requisite causal connection, a plaintiff must present more

20

than "conclusory allegations of retaliatory motive 'unsupported by material facts.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). In short, Plaintiff offers nothing more than his conclusory allegation of retaliation and thus fails to create a genuine issue of material fact that Defendants retaliated against him.

### D.    Intentional Infliction of Emotional Distress (IIED)

Plaintiff's remaining claim is a state-law IIED claim. If the Court adopts this Report and Recommendation, it must decide whether to exercise supplemental jurisdiction over Plaintiff's IIED claim. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In light of the age and procedural posture of this case, and giving due consideration to judicial economy, I recommend that the Court exercise supplemental jurisdiction over Plaintiff's IIED claim.

To establish a claim for intentional infliction of emotional distress, Plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "It has been said that the case is generally one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Mills*, 212 Mich. App. 73, 91 (1995). A defendant may not be held liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *See Lewis v. LeGrow*, 258

Mich. App. 175, 196 (2003). "It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Graham*, 237 Mich. App. at 674.

Plaintiff's IIED claim is subject to dismissal because he fails to demonstrate the high level of extreme and outrageous conduct by any Defendant that the tort requires. Defendant Graham allegedly refused to refer Plaintiff for immediate dental care, told him to re-kite dental to be seen for his dental issues, and fabricated a medical report to downplay the seriousness of his dental condition; Defendant Palmer failed to respond to Plaintiff's complaint or to follow up on her promise to get Plaintiff dental care; Defendant Page "lured" Plaintiff to healthcare based on the misrepresentation that he would be receiving dental care, only to be seen by Defendant Byrne; Defendant Byrne performed a dental exam on Plaintiff that was painful and caused his gums to swell and bleed, refused to refer Plaintiff for immediate emergency dental treatment (to a dentist whom Plaintiff has not shown was present at the facility and available to provide such care), and falsified the contents of the medical record; and Defendant Joboulian delayed the extraction of Plaintiff's tooth for two days. On the record before this Court, none of this conduct provides an actionable basis for an IIED claim.

Finally, Plaintiff fails to show the requisite degree of emotional distress that the tort requires. Actionable emotional distress is characterized by some egregious mistreatment which is 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897, 907 (W.D. Mich. 1983) (citing Restatement (Second) Torts § 46, cmt. d). Although Plaintiff claims that he suffered pain and suffering due to the lack of dental treatment for his tooth, he has not shown that any

22

Defendant inflicted such a degree of emotional distress on Plaintiff that can be characterized as atrocious and utterly intolerable in a civilized community.

## IV.  Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (ECF No. 110) be **GRANTED** and that Plaintiff's complaint be dismissed with prejudice. I further recommend that Plaintiff's motion to strike (ECF No. 140) be **DENIED AS MOOT**.

<br>

Respectfully submitted,

Dated: May 24, 2021                       /s/ Sally J. Berens
                                SALLY J. BERENS
                                U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).